Good morning, Your Honors. May it please the Court, my name is Emmanuel Akudinobi, Counselor for the Plaintiff's Appellant. Your Honors, there are two major issues before this Court this morning. Before I proceed any further, I would like to reserve at least four minutes of my time. Just watch the clock, Mr. Akudinobi. Thank you, Your Honor. The primary issue before this Court is whether or not Ms. Harmon has a cognizable claim under the Constitution of the United States of America to support a cause of action under 42 U.S.C. section 1985, subsection 2, or 42 U.S.C. section 1983. First of all, it's our contention that Ms. Harmon has a property right that was denied to her by virtue of denying her access to the court. Counsel, even if we agree with you, why isn't any cause of action barred by the statute of limitations? Well, her claims are not barred by the statute of limitations for three different reasons that we have set forward. First of all, in 2005, her first request to investigate the death of her mother was rejected. Well, the death was in 2004. Is that correct? That is true, Your Honor. But like in the financial abuse case, when they refused to investigate, she initiated the investigation by hiring a private investigator. And it was after the private investigator that she hired uncovered a confession, excuse me, elicited a confession from the person who perpetrated the financial abuse that she was able to proceed with her prosecution. But when does the statute of limits, when is the statute of limitations triggered under the law? Ordinarily, for 42 U.S.C. section 1982 and 1985, it's triggered using the state's common law personal injury claim, which is 2 years. Right. But the issue here is the accrual date of the statute of limitations. Right. And what we are saying is that the accrual date here can, one, be told through equitable tolling. But wait a minute. You can't toll the accrual of the statute of limitations when the plaintiff realizes she has a claim and files a claim under the Governmental Torts Act against the municipal entity. That happened in 2005. And it wasn't until more than two years later, after she filed a claim and it had been denied, that she filed suit. So if she knew enough about the circumstances to think that she had a claim, the further investigation which may have cemented the veracity and validity of the claim is all water in her wheel. But she still had a claim back in 2005, didn't she? That is true. She had a claim in 2005 for failure to investigate the financial abuse. Right. There is an issue of financial abuse and there is an issue of homicide that she was asking them to prosecute. The financial abuse was uncovered in 2004, which I was saying earlier. They refused to investigate. She initiated the investigation. After eliciting a confession, they now finally investigated. In cause of prosecuting the financial abuse, she now uncovered further evidence that the perpetrator of the financial abuse may in fact be the person responsible for the death of her mother. And you're saying the 2005 claim that she filed with the City of Fresno and the County of Fresno did not cover failure to investigate the homicide? Remember, Your Honor, your question my understanding of your question and going back to the courier is when the person knew or had reason to know. In this instance, she had reason to know of the cause of the death of her mom, not in not when by the time she filed the financial abuse complaint or when it was prosecuted. Are you saying that there's no cruel assessment of limitations until there's more evidence of homicides? What I'm saying in essence is that when the person knew or had reason to know for a fact the basis for her going forward, initially what she wanted to prosecute was the financial abuse. In cause of that prosecution, it was found out that this person may in fact be responsible for the homicide, for the death of the mom. And as such, the prosecutor who handled the financial abuse even requested that the mom's death be investigated as a homicide. And this is a strange situation. Well, not a strange, but an unusual situation where the prosecutor himself is calling for the investigation. Based on that request, she approached authorities to have the remains of her mom exhumed and autopsied. They again refused. She took it upon herself, went through the channels, obtained the proper authorities, had the remains exhumed, had it autopsied, and then following that autopsy, it was confirmed that the death of her mom was caused by homicide. Then she came back again and said, like before, here I am back. Please investigate this, because absent your investigation, this prosecutor who is willing and able to prosecute this case cannot go forward. If the prosecutor doesn't go forward, she cannot have any other right based on the Constitution. And the right here is the property right, which is secured to her by basically being the sole heir to her mom's estate and which precludes her from filing any wrongful death claim. Wait a minute. Why is she precluded from filing a wrongful death claim against the caretaker? Well, perhaps the caretaker has no assets, but at least a claim could be made, could it not? Technically, she can file a claim any time she wants. But here we are looking at a necessary precursor to that claim. The most important thing in her mind is I want to make sure that the person responsible for the death of my mom is prosecuted. All right. And in going through that, she was denied access to be able to do that. And I believe that it was after the autopsy result came out and they promised that, okay, we are now going to investigate it, that her statute, you know, excuse me, that her case accrued. Counsel, you're down to about two minutes. If you wish to reserve, you may do so. Let me reserve the rest, Your Honor. Thank you. We'll hear from the city and county. Good morning, Justices. Tamara Boghossian, Senior Deputy City on behalf of the City of Appalachia. The county and I have agreed that we will split the time five minutes each. There are certain issues that I'm going to discuss and certain issues that Ms. McGuire on behalf of the county is going to discuss. Unless the court has any questions, the topics that I'm going to discuss are I'm going to make a comment with regard to Mr. Okudinabi's statute of limitations argument, and then I'm going to talk about the property interest in police enforcement. What was the last part you spoke to? Yes, the property interest in police enforcement, as well as whether the elder abuse statutes apply in this case. With regard to the court's question to Mr. Okudinabi about the statute of limitations, the record is clear that on February 4, 2005, Ms. Harmon contacted the city individually named defendants, Lieutenant Newton and Sergeant Gertson, regarding the circumstances of her mother's death. In other words, the phone call in February 2005 that Ms. Harmon made to the Fresno Police Department was to investigate the tort claim was filed September 30, 2005, against the city. So that is when she knew or should have known. Let me ask you. Yes. Was the tort claim against the city for Harmon's damages Account Financial Elder Abuse period or for elder abuse and wrongful death? I don't know that she specifically articulated wrongful death. Ms. Harmon repeatedly described the police department's failure as a failure to investigate. Investigate what? Well, it is clear from the phone call in February 2005 it was to investigate the decedent's death. And that is in the record. As a homicide? Yes. My understanding is that she had what she referred to as foul play, that Ms. Harmon believed that there was foul play associated with her mother's death. Well, if there was arsenic in the body as a result of the autopsy, isn't that a pretty good indication that it's worth investigating? However, the report from Dr. Okai did not come out until March of 2007, two years after Ms. Harmon knew or should have known about the police department's failure. Well, once that evidence came out, what did the city do? Well, that's a very good question, Your Honor, because my review of the record reveals that when she received Dr. Okai's autopsy report in 2007, that she faxed a copy of that report to the Bureau, the Department of Justice, and also to the county district attorney's office. There are no facts in the excerpt of record, any facts alleged by Ms. Harmon that she provided the autopsy reports to the city at police. So the city never – well, the city now knows, obviously. Is the city going to do anything about it? Your Honor, there was no reasonable suspicion to believe that Ms. Harmon was murdered. She was 85 years old. She was in a convalescent home, Beverly Manor convalescent home in the city of Fresno, and her death certificate stated that she died of congestive heart failure. And what's very important in this case is not only the timeline, but the fact that prior to her being housed in the convalescent home that she also was in Fresno Community Hospital. She was there for about 30 days, give or take, before she was transferred to the convalescent home, and there is nothing in the record that while she was under the care of physicians at Fresno Community that there was any allegations or indications that she was suffering from arsenic poisoning. Yes. May I ask you this precise question? Yes. You mentioned the phone call of February 4th, 2005. Yes. In which Ms. Harmon said she was complaining about the failure to investigate the death of her mother as foul play. This is a motion to dismiss. Was that fact established in the complaint of Ms. Harmon on file herein? It was a fact that Judge O'Neill took into consideration at the time of his ruling. From what evidence? From the evidence in her complaint as well as in the opposition when she was represented by competent counsel. And the answer to my question is her claim of foul play in 2005 is documented by A, her complaint, and B, by the opposition filed by counsel on her behalf on the motion to dismiss under 12b-6.  That is my understanding, Your Honor. I want to also talk about the property interest and police enforcement. Let me just finish this inquiry with respect to the city. Yes. Given the city has, at some point before this morning, been notified that this person's autopsy revealed the presence of arsenic, apparently in sufficient quantities to suggest homicide? Your Honor, what's very important in this case is that the Bureau of Justice was doing a parallel investigation. What is the Bureau of Justice? The California Department of Justice, which I'm referring to. Oh, the California Department of Justice. Yes. They started an investigation at Ms. Harmon's request in February of 2005, excuse me, in September of 2005. They reopened the case in December of 2005, and Ms. Harmon did forward the autopsy report to the Bureau. However, the Bureau closed its case in August 2007 because its own pathologist disagreed with Dr. Okai's report. So there would be no need for Fresno Police Department to do a further investigation when that investigation was already completed and concluded by another agency. The defense is that the the, in terms of doing anything earlier, the city never was notified about the presence of the arsenic. That is correct. That is correct. And even without overcoming the statute of limitations issue, under Town of Castle Rock of Colorado v. Gonzales, there is no property interest in police enforcement, which would invoke procedural protections of the Fourteenth Amendment. That case is almost directly on point. Ms. Harmon is not entitled to an investigation and or a prosecution. And I'm looking at the time, and unless the Court has any questions. Which case did you say? Town of Castle Rock, Colorado v. Gonzales. Castle Rock, Colorado. Yes. Unless the Court has any questions, I'm going to allow Ms. McGuire to make her argument. Very well. Good morning. May it please the Court. Rosemary McGuire appearing on behalf of the county appellees. And I, on behalf of the county appellees, I want to pick up on the statute of limitations issue on a couple of points. What was alleged was that Harmon, the appellant contacted the Fresno Sheriff's Department and reported a theft and suspicious behavior regarding arsenic being given to her mother back in December of 2004. She contacted Detective Gilbert, who is a defendant in this case, on December 28, 2004. No more contact with the defendant. Two days later, she spoke with one other member of the Fresno Sheriff's Department regarding documentation being brought to the department. She later files her claim, as the Court has noted, her government tort claim. Ms. McGuire. Yes. You're citing facts, including a contact in December 2004 where Ms. Harmon mentions arsenic to a police officer. Is that in the complaint, or where can I find it? In the order by Judge O'Neill, what he does is he keeps in regular type what was in the complaint, in italics the facts that he considered that were submitted in the opposition to the motion to dismiss. So he considered what facts were presented by counsel at the motion to dismiss. Facts presented by counsel in the opposition to the motion to dismiss. Correct. So that is set forth in the order. So the court, the district court, considered the facts in the complaint and the facts in opposition to the motion to dismiss. And so what did the county do after receiving the reports? Well, the important thing is what Ms. Harmon did, which is she hired her own investigator and contacted the Department of Justice, who did an investigation. But my question was, what did the county do? At that point, they did not do anything. They did not conduct anything. Why not? They did, the Bureau, the Department of Justice was conducting an investigation. They were waiting to see what the outcome of the Department of Justice investigation would be? Well, I don't, I'm not sure that they were waiting for that, but there was an investigation underway in terms of the homicide investigation and also the underlying theft issue. And the county was aware of that? I believe that they were. I believe that that's information that was imparted. In fact, what happened in December of 2005, there was a request made to the, by the Bureau, to the coroner, Hensel, and to the pathologist, Dr. Chambliss, to exhume the decedent's body for autopsy. When you say Bureau, who do you mean? The Department of Justice. Their Bureau of Elder Abuse. Okay. And by February 21st of 2006, after consultation between the county coroner and the pathologist, Dr. Chambliss, they opted not to exhume the decedent for autopsy. So in February of 2006, the county was aware that the Department of Justice was doing an investigation. And so over two years had run from that date before the filing of the complaint. Thank you, counsel. Your time has expired. All right. Thank you, Your Honor. Mr. Akutunogi, you have some reserve time. Thank you, Ann. Briefly, I'd like to touch on an issue raised by counsel. First of all, the conviction of Ms. Santino was for financial elder abuse. What the Bureau of Elder Abuse investigated was elder abuse financial, not homicide. It was only following the, excuse me, the conviction of Ms. Santino that the prosecutor requested that the financial, excuse me, that Ms. Herman's mom's death be investigated for homicide. And it was at that point that the county refused to conduct the autopsy that led her to have the remains exhumed. And she did the autopsy. There was mention here on something on her death certificate. Death certificate was issued in 2004. If a death certificate was issued in 2004 and in 2007 it was found that there was enough quantity of arsenic in her system to have killed her and that her death was by homicide, that death certificate in and of itself is not valid by the cause of death, because the autopsy revealed that it was dead by arsenic poisoning. Going to an issue that the county raised, in May 2007, following the finding of Dr. Okoye that she died by homicide, there was a promise made to her to initiate an investigation. Bureau of Elder Abuse does not investigate death. It was not a question of will it be the county that's going to conduct the homicide investigation or the police. In the midst of all that, she held a press conference regarding her ordeal in trying to get the death of her mom investigated. Following that, they said no further investigation. What about the statement by the attorney for the city who said that you never provided the city with the autopsy information? Your Honor, the city was aware of the result of the autopsy. Hence, Mr. Castellanos' decision that it was going to be the police department that was going to investigate that, and that was in May 2007. City had the autopsy, just like the county had the autopsy. As a matter of fact, Chamberlain said, oops, we made a mistake. We should have autopsied these remains to avoid all this stuff, and that was following her press conference. But this case is before this Court on a motion to dismiss, and it's my position that if she's given the leave to amend, she can allege the necessary facts to state out a claim because she has a proper interest by virtue of being the sole heir to her mom's estate. At least if there's a conviction, any restitutory award should go to her. I understand that in criminal cases, it's the people that bring the case, but the real party in interest still remains the victim's family. Thank you for your time. The case just argued will be submitted for decision.
judges: O'scannlain, Rawlinson, Bea